United States District Court
Southern District of Texas
**ENTERED**
December 23, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CYNTHIA JORDAN, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:24-CV-00900 |
| § | |
| STATE FARM LLOYDS, § | |
| § | |
| Defendant. § | |

## ORDER

Pending before the Court is Defendant State Farm Lloyds' ("Defendant") Motion for Summary Judgment (Doc. Nos. 16, 17). Plaintiffs Cynthia Jordan and Anthony Salazar ("Plaintiffs") filed a response, (Doc. Nos. 18, 19), and Defendant replied, (Doc. No. 21). Having reviewed these documents, the record, and the applicable law, the Court hereby GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment. (Doc. Nos. 16, 17).

## BACKGROUND

This is an insurance dispute. Defendant issued the homeowner's insurance policy, Policy Number 53-EN-1432-2 ("Policy"), that covered Plaintiffs' home located at 17419 Little Riata Drive, Houston, TX 77095 ("Property") during all relevant times. On January 28, 2022, Plaintiffs submitted an insurance claim to Defendant for alleged water damage to the interior of their home due to a busted water pipe. That same day, Defendant acknowledged the claim in writing and commenced its investigation. (Doc. No. 17-3 at 2).

Plaintiffs reported damage in the kitchen, breakfast room, den, living room, dining room, and foyer. (*Id.*). They also reported potential damage to the furniture. On January 31, 2022,

Defendant sent Plaintiffs a letter confirming their election to participate in the State Farm Premier Service Program, whereby Plaintiffs selected and authorized a mitigation vendor, ServPro of Katy/Cypress, to perform repairs. (Doc. No. 17-10 at 2). From January 28, 2022, to February 2, 2022, ServPro performed water remediation and mitigation in the reportedly damaged rooms, as well as the hall closet, the hallway, and the pantry. (Doc. Nos. 17-3, 17-10).

On February 23, 2022, Defendant inspected Plaintiffs' property with Plaintiffs' contractor from American Storm Roofing present. (Doc. No. 17-3 at 3). Defendant noted visible damage to the lower cabinet in the area near the dishwasher and sink. At the inspection, Plaintiffs "expressed concern about mold and high moisture levels under the tile flooring in the kitchen" and "the entry of rodents into the property." (Doc. No. 17-3 at ¶ 9). Defendant advised them that removal of the tile flooring was unwarranted and there would be no coverage under the Policy for mold/fungus or damage caused by rodents. Plaintiffs did not show damage to personal property items during the inspection. (*Id.*).

On March 1, 2025, Defendant prepared a draft estimate including repairs to the living room, pantry, kitchen/breakfast area, coat closet, hallway, entry, and dining room. Defendant sent the draft estimate to Plaintiffs and their contractor on March 3, 2022 for review. On March 31, 2022, Defendant learned that Plaintiffs' contractor would not be reconciling Defendant's estimate as Plaintiffs were obtaining a public adjuster. On April 28, 2022, Defendant issued a payment under Coverage A – Dwelling in the Policy in the amount of $9,896.97. Defendant then issued a separate payment of $3,774.48 to ServPro for water mitigation and remediation services. Also on April 28, 2022, Defendant received a Letter of Representation from Plaintiffs' public adjuster, Dwayne Hall. Following discussions with Hall, Defendant voided the April 28, 2022 payments and reissued them with Hall's name on May 3, 2022. (Doc. No. 17-3 at ¶ 17–19).

Defendant approved Coverage C – Additional Living Expenses ("ALE") under the Policy on May 4, 2022. On May 10, 2022, Defendant reviewed a repair estimate submitted by American Storm Roofing totaling $44,703.00. The estimate reported that repairs would take approximately two to three months once they began. On May 12, 2022, Defendant re-inspected the property with a State Farm Team Manager, Plaintiffs' contractor, an estimator from American Storm Roofing, and Plaintiffs. Defendant advised that the ceramic tile flooring needed to be evaluated by a flooring contractor to determine if coverage would be applicable and requested a sample of the flooring to investigate the pricing. Plaintiffs provided the sample. Defendant also advised that there would be no coverage for the upper kitchen cabinets, but it would consider repairs to the lower cabinets.

On May 13, 2022, Defendant contacted Design Flooring to assist in evaluating potential damage to Plaintiffs' tile flooring. On the same day, Hall submitted a revised estimate from American Storm Roofing totaling $49,425.89. On June 8, 2022, Defendant received the evaluation from Design Flooring which determined that there were no visible signs of water damage to the tile flooring. Defendant then generated a revised estimate on June 13, 2022, totaling $29,202.58 on a replacement cost basis, yielding a supplemental payment of $14,216.61. That same day, Defendant sent an email to Hall notifying him of the revised estimate, the supplemental payment, and the findings of the tile floor investigation. Defendant also explained that payment would be made for the storage of Plaintiffs' contents, moving the contents, supervisor fees, and the necessary moving van, as per the American Storm Roofing estimate for $5,225.46. Finally, Defendant explained that ALE was approved for Plaintiffs' hotel stay once repairs commenced and it would extend through the estimated timeframe for repairs.

On June 29, 2023, Defendant stop-paid and reissued, at Hall's request, its previous payments in the amount of $14,216.61 and $5,225.46. Defendant also received a storage invoice

3

from Hall for $1,769.04. Defendant issued a payment for the same under Coverage B on July 7, 2022, and notified Hall on July 13, 2022. On August 9, 2022, Hall informed Defendant that repairs began on August 2, 2022. As a result, Defendant extended ALE to expire on October 18, 2022. On August 17, 2022, Defendant received a Letter of Representation from McCray Law Firm and provided the firm with a copy of Defendant's revised estimate dated October 13, 2022. (Doc. No. 17-3 at ¶ 26).

On October 13, 2022, Defendant again revised its estimate to include additional repairs in the kitchen, yielding a supplemental payment under Coverage A of $5,331.47. On October 28, 2022, Defendant issued the supplemental payment and a payment for storage of Plaintiffs' contents from September 2022 to November 2022 in the amount of $2,100. Defendant notified Plaintiffs' attorney of the same. Additionally, Defendant extended ALE again to November 11, 2022. On November 10, 2022, Plaintiffs' attorney requested an additional extension of ALE on Plaintiffs' behalf. Defendant inquired about the status of the repairs, but their status reportedly could not be obtained. Defendant did not extend ALE at that time. Receiving an ALE invoice on behalf of Plaintiffs on November 21, 2022, Defendant issued payment of $10,709.97 for Plaintiffs' hotel stay.

On March 16, 2023, Defendant received a Letter of Representation from the McClenny, Moseley & Associates firm on behalf of Plaintiffs. On April 24, 2023, Defendant received a demand letter from Plaintiffs' attorney and Defendant responded on May 8, 2023. Subsequently, on January 25, 2024, Plaintiffs filed this action in the 269th Judicial District Court of Harris County, Texas. (Doc. No. 1 at 1). Plaintiffs asserted causes of action against Defendant for (1) breach of contract; (2) negligence; (3) common law duty of good faith and fair dealing; (4) violations of sections 541 and 542 of the Texas Insurance Code; and (5) violations of the Texas Deceptive Trade

Practices Act. Defendant then removed the case to this Court on March 12, 2024, based on diversity jurisdiction. (Doc. No. 1). Defendant now seeks summary judgment, contending that each of Plaintiffs' claims lack evidence and fail as a matter of law.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## ANALYSIS

Defendant moves for summary judgment on all of Plaintiffs' claims. First, Defendant asserts that Plaintiffs' breach of contract claim fails because Plaintiffs have not provided evidence that a covered loss caused damage beyond that for which Defendant accounted in its estimate and payments. Second, Defendant argues that Plaintiffs' extra-contractual claims fail because Plaintiffs have not provided evidence supporting any of the claims.

### A. Extra-Contractual Claims

As an initial matter, the Court need not address Plaintiffs' extra-contractual claims because Plaintiffs, in their response (Doc. No. 19 at 7), expressly state that they no longer wish to pursue their extra-contractual claims. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiffs' extra-contractual claims. Plaintiffs' extra-contractual claims are hereby dismissed.

### B. Breach of Contract Claim

Plaintiffs claim Defendant breached their contract by failing to pay Policy benefits to which they are entitled. Specifically, Plaintiffs allege they are entitled to payment for damage to the following areas: the master bedroom and closet, the laundry room, the hallway closet, the hall bathroom, the foyer and the hallway, the ceramic tile flooring, and the granite countertops in the kitchen. (Doc. No. 19 at 3, 5–6). Additionally, Plaintiffs assert payment claims for replacing the upper kitchen cabinets, additional ALE, and allegedly damaged personal property items.

*1. The Alleged Damaged Areas of the Property*

First, Defendant asserts that "the leak did not extend to or affect" the laundry room, hall bathroom, or master bedroom and "no repairs to these areas were necessary as a result of the occurrence." (Doc. No. 17 at 9). As evidence, Defendant points to the declaration of James

6

Crawford, the professional engineer hired to prepare an opinion on the extent of water damage to the Property. (Doc. No. 17-4). Crawford states that, per his site visit and review of the file documents, the laundry room, hall bathroom, and master bedroom were "not included in any documentation or invoicing by ServPro" and were "well outside of the damage periphery outlines [sic] by ServPro." (Doc. No. 17-4 at 4). He testifies that "all of the documentation provided by ServPro . . . indicated that water exposure did not reach or damage the master bedroom . . . , closet, laundry room, or hall bathroom." (*Id.* at 5).

Further, Crawford states that photographs indicated there were cardboard boxes present in the hallway leading to the laundry room on the date of loss, "suggesting that the leaked water had not likely traveled into this area." (*Id.*). Photographs of the master bedroom also indicated that drywall removal and flooring removal stopped before the master bedroom, "suggesting that the leak had not reached this area." (*Id.*). Additionally, Crawford noted that the only water damage evidenced in the master bedroom appeared near "the rear wall area beneath the window unit and did not extend inward towards the water leak source." (*Id.*). Defendant also notes that ServPro's own records and invoices do not indicate mitigation services to any of these areas. (Doc. No. 17-10). Lastly, Defendant states there is no evidence that Plaintiffs or their representatives claimed or pointed to damage in these areas at either of Defendant's property inspections. (Doc. No. 17 at 10).

In response, Plaintiffs highlight their contractor, Greg Bowen's, declaration and deposition. (Doc. No. 19-1). Overall, Bowen testified in his deposition that he believed the leak damaged the laundry room, the hall bath, and the master bedroom. (Doc. No. 19-2 at 44) (40:8–19). In his declaration, Bowen states that there was sheetrock damage and carpet damage in the master bedroom that "needed to be addressed" and "required replacement." (Doc. No. 19-1 at 2). In his

7

deposition, Bowen testified that the master bedroom got wet from water that "came in through the door . . . during this event" based on the "distance all the way to the door where there's discoloration along the baseline, baseboard line." (Doc. No. 19-2 at 82) (193:7–14). Further, he stated that there would be some sort of discoloration or marking on the walls if the water damage was due to a condensation issue with the window unit, and there was none seen in the photo of the room. (Doc. No. 19-2 at 82–83) (193:25–194:12). As for the hall bathroom, Bowen testified that he was "taking the homeowner's word for it" that the leak caused damage to the bathroom and that ServPro had removed the baseboards in the bathroom. (Doc. No. 19-2 at 44). (40:25–41:8). Lastly, he testified that the laminate floor and baseboards in the hallway were damaged. (Doc. No. 19-2 at 56) (88:20–24).

Under the summary judgment framework, once the movant (in this case, Defendant) carries its initial summary judgment burden of proof, the burden shifts to the non-movant (Plaintiffs) to persuade the Court that the motion should not be granted by showing the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 321–25; *Matsushita*, 475 U.S. at 587. Defendant has provided sufficient evidence to meet its initial summary judgment burden regarding the "damaged" areas of the house. Defendant provided testimony that the leak did not extend to or affect the laundry room, hall bathroom, or master bedroom. The burden thus shifted to Plaintiffs, who also provided testimony that the rooms were damaged due to the leak. Plaintiffs therefore satisfied their summary judgment burden to show the existence of a genuine issue of material fact regarding the allegedly damaged areas of the Property not estimated by Defendant.

Accordingly, Defendant is not entitled to summary judgment on Plaintiffs' claims for payment regarding these allegedly damaged areas of the Property.

*2. The Ceramic Tile Flooring*

Second, Defendant disputes Plaintiffs' claim for payment regarding repairs to the ceramic tile flooring in the kitchen and breakfast area. Defendant provides an opinion from Crawford asserting that, per FEMA, the ceramic floor tiles are capable of withstanding direct and prolonged contact (at least 72 hours) with floodwater without sustaining significant damage, meaning any damage requiring more than cosmetic repair. (Doc. No. 17-4 at 4). Here, Defendant asserts, "water mitigation began the day of the leak." (Doc. No. 17 at 10); (Doc. No. 17-10). Further, Crawford states that there was no file documentation of physical damage to the ceramic floor tiles or any moisture tests indicating water entrapped underneath them. (*Id.* at 5). Rather, ServPro's moisture tests showed "acceptably dry conditions" at the ceramic floor tile by approximately January 31, 2022. (*Id.*).

Plaintiffs, however, assert that water had penetrated the tile, and Defendant did not pay for replacement of it. (Doc. No. 19 at 5–6). Bowen, Plaintiffs' contractor, stated in his declaration that "water had settled underneath the tile and damaged the mortar." (Doc. No. 19-1 at 2). According to Cynthia Jordan, despite the tile flooring in the kitchen being affected, it was not removed by ServPro. (Doc. No. 19-3 at 14).

Again, Defendant provided sufficient evidence to meet its initial summary judgment burden – it provided testimony that the ceramic tile flooring in the kitchen and breakfast area was not damaged. Plaintiffs, however, also provide testimony that such flooring was damaged. As such, Plaintiffs have identified a genuine factual dispute, and Defendant is not entitled to summary judgment on Plaintiffs' claim for payment regarding the ceramic tile flooring.

### 3. *The Granite Countertops*

Third, Defendant asserts that it "does not owe under the Policy for repairs to damage caused by Plaintiffs' individual contractors during the repair process." (Doc. No. 17 at 10). As evidence, Defendant provides testimony from Jeff Hunt, the president/owner of Jeff Hunt Construction who was hired to "prepare an opinion on the extent of water damage to the Property and the appropriateness of the cost estimates developed by State Farm and American Storm Company." (Doc. No. 17-5 at 2). Based on his investigation of the property on April 24, 2025 and review of ServPro's records, Hunt testifies that the "damage caused to the kitchen countertop and sink was due to a lack of care, and the cost of these items should be borne by [Plaintiffs' contractor]." (*Id.* at 4). Hunt testifies to a process by which the cabinets could have been replaced while keeping the countertops intact. (*Id.*).

In response, Plaintiffs argue that due to the construction of the granite countertops, "it was almost impossible to remove them without damaging them." (Doc. No. 19 at 6). Bowen testified that, during the repair process for the cabinets in the kitchen, the granite countertops were damaged. (Doc. No. 19-2 at 63) (115:2–21). He stated that since the countertops were glued and installed correctly, it was "very close to being impossible to not damage" them while completing repairs. (*Id.*). In his testimony, Bowen specifically stated that he was not giving an opinion as to coverage for the damaged granite countertops. (Doc. No. 19-2 at 63).

Since the parties clearly dispute whether damage to the countertops was avoidable in repairing the cabinets in the kitchen, Plaintiffs have established a genuine factual dispute regarding coverage for repairs to the granite countertops. As such, Defendant is not entitled to summary judgment on Plaintiffs' claim.

### 4. *Plaintiffs' Other Claims for Additional Policy Benefits*

Lastly, Defendant argues against Plaintiffs' additional claims for payment. First, Defendant claims that the upper kitchen cabinets sustained no damage from the leak, and, therefore, should have been merely modified to match the lower cabinets instead of replaced. (Doc. No. 17 at 10). Defendant provides testimony from Hunt supporting its argument; Hunt testified that the upper kitchen cabinets "were not damaged and did not warrant replacement" and provided two options, refinishing or painting the cabinets, as alternatives to replacing them. (Doc. No. 17-5 at 5–6). Therefore, Defendant argues, it does not owe payment for the cost to replace the upper kitchen cabinets.

Second, Defendant asserts that it does not owe payment for ALE because ALE is to be paid only for the time required to repair or replace Plaintiffs' property. (Doc. No. 17 at 10); (Doc. No. 17-2 at 32) (Coverage C – Loss of Use, Additional Living Expenses). Defendant set up ALE for Plaintiffs based on the estimated timeline for repairs provided by Plaintiffs' contractor and then proceeded to extend ALE twice. (Doc. No. 17-3 at 5, 7). When Plaintiffs requested an additional extension when their hotel stay was set to expire, Defendant inquired about the status of the repairs, but no information was provided. (*Id.* at 12–13). Defendant alleges, therefore, that it did not provide another extension because Plaintiffs did not provide evidence that an extension of coverage was reasonable or necessary (*Id.*).

Third, Defendant contends that it does not owe any payment for Plaintiffs' allegedly damaged personal property items. (Doc. No. 17 at 11). As evidence, Defendant states that it paid $9,094.50 for the storage facility rental fees where Plaintiffs' personal property was stored and $4,859.56 for related moving expenses. (Doc. No. 17-3 at 6–7, 126, 135). While Plaintiffs previously testified that they disposed of most of the damaged personal property items just days

11

after the leak and before Defendant inspected the property, (Doc. No. 17-7 at 9–10), at no point did Plaintiffs, their contractor, or their public adjuster provide State Farm with a list of the damaged personal property items. Defendant provides evidence that despite Plaintiffs' public adjuster receiving the list of damaged personal property on March 30, 2023, he failed to provide the list to Plaintiffs' attorney, and Defendant, thereafter. (Doc. No. 17-6 at 14); (Doc. No. 17-8 at 16–18); (Doc. No. 17-9). As a result, Defendant argues it is not liable for payment of damaged personal property for which neither Plaintiffs nor their representatives presented a claim.

Defendant, therefore, provided sufficient evidence to meet its initial summary judgment burden regarding these claims for additional Policy benefits. Defendant provided summary judgment evidence for each claim supporting that (1) the upper kitchen cabinets were not damaged and did not need to be replaced, (2) Plaintiffs did not provide evidence that an ALE extension was warranted, and (3) Plaintiffs did not provide Defendant with a claim for its alleged list of damaged personal property. The burden thus shifted to Plaintiffs. Plaintiffs, however, do not address *any* of these argument in their summary judgment response. (Doc. No. 19). Plaintiffs do not provide any specific facts identifying a genuine factual dispute for these claims. As such, Plaintiffs have not met their summary judgment burden.

Accordingly, Defendant is entitled to summary judgment on Plaintiffs' claims for payment regarding the upper kitchen cabinets, ALE, and the allegedly damaged personal property items.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion for Summary Judgment. (Doc. Nos. 16, 17). The Court denies Defendant's Motion regarding Plaintiffs' claims for the allegedly damaged areas of the Property, the ceramic tile flooring, and the granite countertops. Plaintiffs' extra-contractual claims and claims for payment

for the upper kitchen cabinets, ALE, and the allegedly damaged personal property items are hereby dismissed. The Court will issue an order re-setting the trial in this matter.

Signed on this 23rd day of December, 2025.

Andrew S. Hanen
United States District Judge